Myron Kent GEORGE *v.* STATE of Arkansas

CR 01-871 151 S.W.3d 770

Supreme Court of Arkansas
Opinion delivered March 4, 2004

*Bowden & Smith*, by: *David O. Bowden*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. After a Greene County Deputy found what appeared to be a meth lab in a shed on the property of appellant, Myron George, both appellant and Martin Strugala were arrested. Following appellant's arrest, a search, executed pursuant to a warrant, revealed a working meth lab, components used to produce methamphetamine, and finished methamphetamine. In a criminal information, appellant was charged with being an accomplice in the manufacturing of methamphetamine, possession of methamphetamine, and theft by receiving.

Prior to trial, appellant filed a *pro se* motion seeking to suppress all evidence obtained during the search of his property[1]. An in-chambers hearing was held on appellant's motion to suppress, but the record does not contain a transcript of the proceedings relating to the suppression hearing[2]. A notation on the docket sheet merely states that appellant's motion was denied.

During the process of the trial, appellant's attorney informed the trial court that he objected to Nila Keels, a court reporter who was not certified, transcribing the proceedings. The trial court noted the objection, but stated that he had granted Ms. Keels an

---

[1] Although not fully developed in his pretrial motion, appellant argued at trial that the evidence should have been excluded because Deputy Mark Davis lacked reasonable suspicion to stop at his home and that this unlawful stop and search led to his arrest and the issuance of a warrant for a further search of his property.

[2] Because we have no record of the suppression hearing, we do not know what evidence or arguments were presented in support of appellant's motion.

emergency certification which would permit her to transcribe the trial. When appellant's counsel persisted in his objection, the trial court ordered him to proceed or face contempt charges.

At the close of the evidence, the trial court granted appellant's motion for a directed verdict on the charge of theft by receiving, but permitted the remaining charges to be considered by the jury. The jury found appellant guilty as an accomplice to manufacturing methamphetamine and possession of methamphetamine. Appellant was sentenced to ten years' imprisonment for his convictions.

Appellant filed a notice of appeal from his convictions. The deadline for filing the record on appeal was August 9, 2001. On August 8, 2001, appellant tendered a partial record and filed a motion seeking a rule on the clerk. We remanded the matter back to the trial court and directed it to take "whatever actions are necessary to secure the prompt certification of a full and complete record for appeal in this matter." *George v. State*, 346 Ark. 22, 53 S.W.3d 526 (2001). Upon remand, the trial court held a hearing and entered an order finding the there were "no substantive defects in the transcript as prepared by Nila Keels." It further found that "the transcript is sufficiently accurate for use and consideration by the Arkansas Supreme Court for all appellate purposes." Thereafter, appellant's attorney filed a renewed motion for a rule on the clerk. We granted appellant's motion and permitted our clerk to file the record prepared by Nila Keels. *George v. State*, 351 Ark. 209, 209 S.W.3d 931 (2002). This appeal followed.

On appeal, appellant offers four points for our consideration. We remand this case to the trial court for the limited purpose of conducting an on-the-record hearing on appellant's motion to suppress.

 In his first point on appeal, appellant argues that the trial court erred when it denied his motions for directed verdicts on the charges of being an accomplice to the manufacturing of methamphetamine and possession of methamphetamine. We must address this point before considering other assignments of error in order to preserve appellant's right to freedom from double jeopardy. *Rankin v. State*, 329 Ark. 379, 948 S.W.2d 397 (1997). A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Walley v. State*, 353 Ark. 586, 112 S.W.3d 349 (2003). The test for determining the sufficiency of the evidence is whether

the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* When reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.* Additionally, when reviewing a challenge to the sufficiency of the evidence, we consider evidence, which may have been inadmissible, in the light most favorable to the State. *See Harris v. State,* 284 Ark. 247, 681 S.W.2d 334 (1984).

Appellant was convicted of violating Ark. Code Ann. § 5-64-401 (Supp. 1999). The jury concluded that appellant was manufacturing methamphetamine. Appellant's criminal liability was based upon his status as an accomplice. In cases where the theory of accomplice liability is implicated, we affirm a sufficiency of the evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Cook v. State,* 350 Ark. 398, 86 S.W.3d 916 (2002).

Arkansas Code Annotated § 5-2-402 (Rep. 1997), articulates the elements necessary to establish that a person is criminally liable for the conduct of another person. The statute provides:

> A person is criminally liable for the conduct of another person when:
>
> (1) He is made criminally liable for the conduct of another person by the statute defining the offense; or
>
> (2) He is an accomplice of another person in the commission of an offense; or
>
> (3) Acting with the culpable mental state sufficient for the commission of the offense, he causes another person to engage in conduct that would constitute an offense but for a defense available to the other person.

*Id.* Arkansas Code Ann. § 5-2-403 (Repl. 1997), gives the statutory definition of an accomplice:

> (a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense, he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or

(3) Having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

*Id.* We have explained that relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in proximity of a crime, the opportunity to commit the crime, and an association with a person involved in a manner suggestive of joint participation. *Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002). A defendant is an accomplice so long as the defendant renders the requisite aid or encouragement. *Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002).

Mindful of the relevant statutory provisions and case law, we must determine whether there was sufficient evidence to support appellant's conviction. Deputy Mark Davis of the Greene County Sheriff's Department testified that he was on patrol when he drove past appellant's home at approximately 4:00 a.m. As he drove past the home, he noticed a light on in a shed located on appellant's property. When Deputy Davis drove back by the location, the light was turned off, and he decided to stop and investigate. Deputy Davis then discovered that a vehicle owned by Martin Strugala, an individual previously arrested for manufacturing methamphetamine, was parked in appellant's driveway. Upon

exiting his car, Deputy Davis smelled anhydrous ammonia coming from the shed. As he approached the shed, Deputy Davis noticed a smoldering burn pile that contained strips of aluminum and coffee filters. He also saw a plastic gas container and what he described as a "pill soak jar." Additionally, Deputy Davis testified that he saw some stripped lithium batteries. Deputy Davis explained that acid from the lithium batteries is used by individuals who manufacture methamphetamine. Deputy Davis then instructed appellant to exit the shed. Appellant complied with Deputy Davis's order, and Martin Strugala also exited the shed. As Strugala exited the shed, Deputy Davis saw a cloud of smoke coming from inside the shed. Deputy Davis explained that he had seen this occurrence many times in other meth labs. Deputy Davis testified that he would consider what he observed at appellant's home to be a working meth lab.

Toby Carpenter, formerly a narcotics investigator with the Greene County Sheriff's Department, also testified at appellant's trial. He explained that after appellant and Mr. Strugala were arrested, a search warrant for appellant's property was obtained. Officer Carpenter testified that during the search of appellant's shed, property, and home, law enforcement officials found coffee filters, quart jars, a Coleman fuel can, a can of acetone, two five-gallon propane tanks, salt, drain cleaner, a hydrochloric generator, lithium batteries, and several containers with white residue on them. Officer Carpenter explained how each component was used in the process of manufacturing methamphetamine. Officer Carpenter also testified that they found lithium salt on coffee filters in the burn pile by the shed on appellant's property. Lithium and salt are also used to manufacture methamphetamine. During the search, a white powder, which was forty-five percent methamphetamine hydrochloride, was also in appellant's shed. Additionally, law enforcement officials found methamphetamine at various stages of processing in appellant's shed. Officer Carpenter stated that based on his experience, it appeared to him that appellant and Mr. Strugala had been manufacturing methamphetamine on the night of their arrest. Finally, Officer Carpenter testified that appellant informed him that he knew that the "meth lab" was in his shed, and he knew that Mr. Strugala was manufacturing the drug.

Martin Strugala testified that he was serving an eighteen-year sentence in the Arkansas Department of Correction. He was appellant's co-defendant and pleaded guilty to drug-related

charges. Mr. Strugala admitted that he was manufacturing meth-amphetamine on the day that he and appellant were arrested and that he had stored the items needed to make the drug in appellant's shed. He further stated that appellant knew that the items were stored in his shed. Finally, Mr. Strugala testified that the hydro-chloric generator, the drain opener, the jars located outside of the shed, and the battery metal did not belong to him.

■ After reviewing the foregoing evidence, we conclude that there was sufficient evidence whereby a jury could have concluded that appellant was acting as an accomplice to Martin Strugala in the manufacturing of methamphetamine. Accordingly, the trial court properly denied appellant's motion for a directed verdict.

■■ Next, we must determine whether there was suffi-cient evidence to establish that appellant possessed methamphet-amine. The drug was found in appellant's shed and in a vehicle parked on his property. We have explained that the State need not prove that the accused physically possessed the contraband in order to sustain a conviction for possession of a controlled substance if the location of the contraband was such that it could be said to be under the dominion and control of the accused. *Walley, supra.* Constructive possession may be established by circumstantial evi-dence. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). When seeking to prove constructive possession, the State must establish that the defendant exercised care, control, and management over the contraband. *Id.* This control can be inferred from the circum-stances, such as the proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found. *Nichols v. State*, 306 Ark. 417, 815 S.W.2d 382 (1991).

■ In the case now before us, methamphetamine was found in a container on the seat of a truck parked on appellant's property. The container was located next to beer that belonged to appellant in a vehicle Mr. Strugala identified as appellant's. Addi-tionally, methamphetamine was found in the floor of a shed located on appellant's property. Deputy Davis testified that he witnessed appellant exit the shed prior to the drugs being discov-ered. The components needed to manufacture the drug were found in appellant's home, in appellant's shed, and on appellant's property. Additionally, appellant admitted to Officer Toby Car-

penter that he had a "meth problem" and that he purchased drugs from Martin Strugala, an individual who was present prior to the drugs being discovered in appellant's shed and in the vehicle Strugala testified was driven by appellant. We conclude that there was substantial evidence whereby the jury could have concluded that appellant possessed methamphetamine.

We next consider appellant's argument that the trial court erred when it denied his motion for a new trial that was based on an alleged discovery violation made by the State. Specifically, appellant argues that the State violated Rule 17.1 of the Arkansas Rules of Criminal Procedure by failing to provide him with a copy of a statement made by him to Officer Toby Carpenter. This issue is not preserved for our review.

To preserve an issue for appeal a defendant must object at the first opportunity. *Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000). A party who does not object to the introduction of evidence at the first opportunity waives such an argument on appeal. *Id*. The policy reason behind this rule is that a trial court should be given an opportunity to correct any error early in the trial, perhaps before any prejudice occurs. *Id:*

In the case now before us, Officer Carpenter testified that appellant informed him that he had used methamphetamine and that the drugs were supplied by Martin Strugala. Officer Carpenter also testified that appellant told that him that he knew Mr. Strugala was manufacturing methamphetamine in his shed. After Officer Carpenter had been excused, appellant's attorney raised an objection based on the State's alleged failure to comply with the rules for discovery. This objection, which was not made at the first opportunity, was untimely. Accordingly, we conclude that appellant has waived a challenge to the admission of this evidence on appeal.

Appellant's next two allegations of error are intertwined. First, appellant argues that the record was not properly completed and that the trial court failed to comply with our order on remand because there is no record of the hearing held on his motion to suppress. Next, appellant argues that the trial court erred when it denied his motion to suppress, and that because the record does not contain a transcript from the hearing on his motion, we cannot conduct our *de novo* review of this issue.

On August 8, 2001, appellant filed a partial record and a motion seeking a rule on the clerk. In his motion, appellant explained that Nila Keels was not a certified court reporter at the time of his trial and requested that we accept a record for his appeal that did not contain a transcription of the testimony that occurred at trial. *George v. State*, 346 Ark. 22, 53 S.W.3d 526 (2001). We denied appellant's motion and remanded the matter back to the trial court with instructions that it "take whatever actions are necessary to secure the prompt certification of a full and complete record for appeal in this matter." *Id.*

Upon remand, the trial court entered an order finding the there were "no substantive defects in the transcript as prepared by Nila Keels." *George v. State*, 351 Ark. 209, 209 S.W.3d 931 (2002). It further found that "the transcript is sufficiently accurate for use and consideration by the Arkansas Supreme Court for all appellate purposes." *Id.* Thereafter, appellant's attorney filed a renewed motion for a rule on the clerk. In the *per curiam* in which we considered appellant's motion, we explained the procedure whereby we will accept a record that was not transcribed by a certified court reporter. Citing *Mitchell v. State*, 345 Ark. 359, 45 S.W.3d 846 (2001) (*per curiam*), we wrote "our Supreme Court Clerk would only be directed to accept a record prepared by an uncertified court reporter upon certification by the attorneys of record by means of affidavits that the transcript was true, accurate, and complete." *George v. State*, 351 Ark. 209, 209 S.W.3d 931 (2002). By contrast, in this case now under consideration, we were provided a certification from the prosecuting attorney and a finding of accuracy by the trial court. However, appellant's attorney refused to certify as to the accuracy of the record. We concluded that the trial court's findings and the prosecuting attorney's affidavit certifying the transcript to be a fair and accurate record of appellant's trial sufficiently satisfied the *Mitchell* requirements to allow our clerk to accept the record for filing. *George v. State*, 351 Ark. 209, 209 S.W.3d 931 (2002).

Although we accepted the record for filing with our clerk on the basis of the certification by the prosecuting attorney and the finding of sufficiency by the trial court, we agree with appellant that the record now before us is flawed. Specifically, we are unable to conduct a *de novo* review of the disposition of appellant's motion to suppress because there is no transcript of the hearing that was held on the motion.

■ Administrative Order No. 4 provides "unless waived on the record by the parties, it shall be the duty of any circuit court to require that a verbatim record be made of all proceedings pertaining to any contested matter before it." *See also* Ark. Code Ann. § 16-13-510; Ark. R. Crim. P. 20.3(e); *Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003); *Bradford v. State*, 351 Ark. 394, 94 S.W.3d 904 (2003); *Smith v. State*, 324 Ark. 74, 918 S.W.2d 714 (1996).

In the case now before us, appellant, relying upon Rule 16.2 of the Arkansas Rules of Criminal Procedure filed a *pro se* motion seeking to suppress "all evidence illegally obtained." A review of the docket sheet reveals that a hearing on appellant's motion was held "in chambers" and that the motion was "denied." However, a verbatim account of the hearing is not included in the record. In his brief, appellant notes:

> Counsel for defendant has a definite memory of the hearing which was supposed to be on the record. The prosecutor . . . stated . . . that he had no memory of whether the hearing was on or off the record, but noted that it would be unusual for his office to allow a suppression hearing off-the-record. Ms. Keels [the court reporter] could find no record she made of the hearing.

On appeal, appellant argues that the trial court erred when it denied his motion to suppress. The record on this issue is unclear. If the hearing was held, but was not recorded verbatim, the trial court ignored Administrative Order No. 4. If the hearing was held and properly recorded, but omitted from the record filed with our clerk, the trial court disregarded our previous order to take whatever actions are necessary to secure. . . a full and complete record for appeal in this matter." Under either scenario, we find that the trial court erred.

■ To resolve this error, we will employ the limited-remand procedure, which we have used in other cases. *See Rankin, supra* (remanded for a new suppression hearing on voluntariness of statement because the record did not contain an account of any such hearing); *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996) (remanded for a new suppression hearing on voluntariness of statement because material police witness not present at first hearing); *Moore v. State*, 303 Ark. 1, 791 S.W.2d 698 (1990) (remanded for a *Denno* hearing); *Harris v. State*, 271 Ark. 568, 609 S.W.2d 48 (1980) (remanded for an explicit determination by the

trial court on voluntariness of confession); *Hammers v. State*, 261 Ark. 585, 550 S.W.2d 432 (1977) (remanded for hearing to determine whether defendant struck a deal with the prosecutor to give a statement in return for immunity). We direct the trial court on remand to hold a hearing on the record with a certified court reporter for the limited purpose of developing the evidence, arguments, and allegations relating to a full consideration of appellant's pretrial suppression motion.

After conducting the hearing, if the trial court determines that the evidence was illegally obtained, the trial court should suppress the evidence and order a new trial. If the trial court determines that the evidence was not illegally obtained, a new trial will not be required. *Rankin, supra.* Because we are remanding this matter for a new hearing on appellant's motion to suppress, and because a denial of appellant's motion in this hearing will be appealable, we need not reach the issue relating to the trial court's denial of appellant's motion to suppress in this appeal.

Remanded.