## Aaron STRONG *v.* STATE of Arkansas

CR 05-1414                                          242 S.W.3d 620

### Supreme Court of Arkansas
### Opinion delivered November 9, 2006

Appeal from Drew Circuit Court, *Samuel B. Pope*, Judge; affirmed.

*John F. Gibson, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. Appellant, Aaron Strong, was convicted in the Drew County Circuit Court of possession of cocaine with intent to deliver. The jury sentenced appellant to forty-one years in the Arkansas Department of Correction pursuant to Arkansas Code Annotated § 5-64-401(a)(1)(i) (Supp. 2003). We hold that the trial court did not err in denying appellant's motion for directed verdict, and we affirm.

Alerted by California drug enforcement officials in July of 2004, authorities in Monticello intercepted a United Parcel Ser-

vice (UPS) package. The package, which contained a crock pot, a can of chili, Velveeta cheese, and 520 grams of cocaine, was discovered with a search warrant supported in part by a drug-dog alert. Sergeant Michael Todd Daley of the Arkansas State Police testified that the can of chili and the Velveeta cheese were probably included to make the package appear to be a dip-making kit to divert authorities from looking in the crock pot for illegal substances.

After discovering the cocaine, the police planned a controlled delivery to the address on the package listed as Eric Webb, 512 Roosevelt Court, Monticello. The officers then removed all but 12.7914 grams of cocaine from the package. They placed the smaller amount of cocaine back in the crock pot and sealed the box to be delivered to Eric Webb. Criminal investigator Kenneth Whitmore then went to 512 Roosevelt Court to deliver the package. When appellant answered the door, Officer Whitmore, disguised as a UPS delivery man, asked for Eric Webb. Appellant told Officer Whitmore that he was not Mr. Webb but that he would get Mr. Webb, who was inside the home. Appellant returned with a man in a wheelchair who claimed to be Mr. Webb. The man in the wheelchair[1] told Officer Whitmore that he was unable to sign for the package because he could not write at the time due to an injury of his hands. He then gave appellant the authority to sign for the package. Officer Whitmore placed the package on the counter and then left the home.

Appellant immediately exited the back of the house with the package in hand. Officer John Carter was waiting to arrest him. Officer Carter announced to appellant that he was a Monticello policeman and that appellant needed to put the box on the ground. Appellant was arrested, and the package containing the contraband was confiscated by Officer Daley of the Monticello Police Department. Appellant was taken to the police station, where he signed a Miranda waiver and was questioned about the package and his involvement in the transaction.

At trial, evidence was presented, without an objection, to show that appellant had the intent to deliver the 520 grams of

---

[1] At trial it was discovered that Eric Webb was a fictitious name and that the gentleman in the wheelchair was Wayne Hootsell. Mr. Hootsell did not appear to be linked with the transport of the cocaine. His address had been used for appellant to receive the package containing the cocaine, and he had no knowledge of the transaction. Mr. Hootsell was never charged with an offense.

cocaine in the package when it arrived in Dermott rather than the 12.7914 grams that the officers left in the package. This evidence included a prior offense from the Ashley County Circuit Court in July 2002, where appellant was charged with conspiracy to possess with the intent to deliver cocaine. Further, there was no indication, at the time of arrest, that appellant had knowledge that any of the cocaine had been removed from the package. It was reasonable for the jury to conclude that he believed that the 520 grams were still in the crock pot when the package was delivered. At the conclusion of the State's evidence, appellant moved for directed verdict. The court denied the motion. On June 1, 2005, the jury returned a guilty verdict and sentenced appellant to forty-one years in the Arkansas Department of Correction. The judgment and commitment order was entered on June 3, 2005. Appellant filed his notice of appeal on June 20, 2005. Appellant now appeals.

We review a motion for directed verdict as a challenge to the sufficiency of the evidence. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006) (citing *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004)). We have repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* (citing *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002)). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*

For his sole point on appeal, appellant argues that the trial court erred when it denied his motion for directed verdict. Specifically, appellant contends that the State did not present sufficient evidence to convict him of intent to deliver the 520 grams of cocaine rather than the 12.7914 that he actually possessed. Appellant further asserts he was sentenced under the wrong statute. In response, the State argues that appellant had the intent to possess and deliver 520 grams of cocaine and that his sentence was proper. We affirm the conviction and sentence.

The issue is whether there was sufficient evidence to support appellant's conviction that he had possessed with intent to deliver 520 grams, the amount shipped, or whether the conviction can be only for 12.7914 grams, the amount that was actually delivered to him. The proper sentencing guideline is determined by the

amount of cocaine for which a defendant is criminally responsible. Arkansas Code Annotated § 5-64-401(a)(1)(i) (Supp. 2003) states:

> (i) Any person who violates this subsection with respect to [a] controlled substance classified in Schedules I or II, which is a narcotic drug or methamphetamine, and by aggregate weight, including adulterants or diluents, is less than twenty-eight grams (28g.), is guilty of a felony and shall be imprisoned for not less than ten (10) years nor more than forty (40) years, or life, and shall be fined an amount not exceeding twenty-five thousand dollars ($25,000). For all purposes other than disposition, this offense is a Class Y felony. . . .
>
> A controlled substance classified in Schedules I or II, which is a narcotic drug or methamphetamine, and by aggregate weight, including adulterants or diluents, is four hundred grams (400g.), or more, is guilty of a felony and shall be imprisoned for not less than forty (40) years, or life, and shall be fined an amount not exceeding two hundred and fifty thousand dollars ($250,000). For all purposes other than disposition, this offense in a Class Y felony.

*Id.*

In *Cary v. State*, 259 Ark. 510, 534 S.W.2d 230 (1976), we addressed the issue of intent in narcotic delivery cases. There, we said that in determining whether the evidence of appellant's guilt was substantial, the evidence, with all reasonable inferences to be drawn from it, is viewed in the light most favorable to the state. *Id.* at 235, 534 S.W.2d at 516 (citing *Rogers v. State*, 257 Ark. 144, 515 S.W.2d 79 (1974)). When the evidence is sufficient, we cannot say that the inference that appellant had joint or constructive possession of the heroin is unreasonable. Either is sufficient. *Id.* (citing *Smith v. United States*, 385 F.2d 34 (5th Cir. 1967); *Hernandez v. United States*, 300 F.2d 114 (5th Cir. 1962)). Constructive possession of a controlled substance means knowledge of its presence and control over it. *Id.* (citing *State v. Montoya*, 509 P.2d 893 (N.M. 1973)). *See also People v. Bock Leung Chew*, 298 P.2d 118 (Cal. Ct. App. 1956). Neither actual physical possession at the time of the arrest nor physical presence when the offending substance is found is required. *Id.* As a matter of fact, neither exclusive nor physical possession is necessary to sustain a charge if the place where the offending substance is found is under the dominion and control of the accused. *Id.* The court went on further to say it was reasonable for the jury to infer from the evidence that the premises were under appellant's dominion and control. *Id.*

In *People v. Williams*, 485 P.2d 1146 (Cal. 1971), the Supreme Court of California stated:

> Constructive possession occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control or to the joint dominion and control of the accused and another. The elements of unlawful possession may be established by circumstantial evidence and any reasonable inference drawn from such evidence.

The evidence of the circumstances is sufficient basis for a reasonable inference that appellant knew of the presence of the heroin and that he had the right to exercise, at least, joint dominion and control of it. *Id.*

Further, in *State v. Williams*, 690 N.E.2d 1297 (Ohio Ct. App. 1996), officials intercepted a package containing 1000 grams of cocaine. The officials removed about 800 grams of the cocaine, added a benign substance to the remaining 200 grams, and re-packed the box to be delivered in a controlled delivery to the appellant. The court in *Williams* stated that "constructive possession exists when an individual exercises dominion and control over an object, even though the object may not be within his immediate physical possession." *Id.* The Ohio court held that when law enforcement has properly intercepted a package and proves the original contents, and then substitutes a benign material, the relevant amount of contraband is that amount in the original package, and if the defendant possesses the package thereafter, a jury is entitled to conclude that the defendant constructively possessed the original contents of the package, not the substituted material. *Id.* at 1300 (citing *U.S. v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995)). We are persuaded by this precedent from other jurisdictions.

■ In this case, substantial evidence exists to support a conclusion that appellant had the intent to posses and deliver 520 grams of cocaine. Here, there was no indication from the package that there was less than the amount appellant was anticipating. Appellant took the package from Officer Whitmore and immediately exited the home. In addition, the following evidence supports a finding that the appellant had constructive possession of the package as shipped because he believed that he was receiving 520

grams of cocaine. First, he got "Webb" to receive the package from the UPS delivery man. Second, he personally signed for the package. Third, he immediately left the back of the home with the package in hand. Further, the interception of the package did not interfere with the amount that appellant could be charged with possessing because a valid search warrant had been issued. Also, there were no objections made to the introduction of this evidence at trial. Therefore, the jury properly sentenced appellant under Ark. Code Ann. § 5-64-401(a)(1)(i) (Supp. 2003), which applies when a person possesses with intent to deliver a narcotic or methamphetamine over 400 grams and provides punishment of "no less than forty (40) years, or life." As stated in *Cary*, the jury had a right to infer from the evidence that the contents were under appellant's dominion and control. Here, the jury looked to the evidence presented and determined that appellant had a reasonable belief that he had dominion and control of the 520 grams of cocaine and was unaware there were only 12.7914 grams in the package. The jury obviously believed that the State proved beyond a reasonable doubt that appellant had the intent to possess and deliver the entire 520 grams of cocaine that was originally contained in the package prior to police interception. Therefore, we hold that the evidence is sufficient to support a finding that appellant had the intent to possess and deliver the entire 520 grams of cocaine. Accordingly, we affirm the jury's verdict.

Affirmed.

HANNAH, C.J., BROWN, and IMBER, JJ., dissent.

JIM HANNAH, Chief Justice, dissenting. I respectfully dissent. The State offered no evidence to show that Strong ever actually or constructively possessed any drugs except those contained in the package that he received in the controlled delivery. The majority concludes that although police removed all but 12.7914 grams of the cocaine from the package, it was reasonable for the jury to conclude that Strong believed that the original 520 grams of cocaine were still in the crock pot when it was delivered. This conclusion could only be based on speculation. The evidence showed that Melvin Braddock called Strong from California and asked if he knew an address where a canning machine might be delivered and that Strong admitted to police that he asked Braddock to include "weed" in the package. This could imply that Strong knew some-

thing illegal was to be shipped; however, the State offered no evidence to show that Strong ever had knowledge that the package contained 520 grams of cocaine.

Further, in holding that Strong had constructive possession of the entire 520 grams of cocaine shipped from California, the majority relies on a decision of the Ohio Court of Appeals:

> We hold that when law enforcement has properly intercepted a package and proves the original contents, and then substitutes a benign material, the relevant amount of contraband is that amount in the original package, and if the defendant possesses the package thereafter, a jury is entitled to conclude that the defendant constructively possessed the original contents of the package, and not the substituted material.

*State v. Williams*, 690 N.E.2d 1297, 1300 (Ohio Ct. App. 1996) (citing *United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995)).[1] Without any meaningful discussion of how the evidence in the case showed that the defendant had control or dominion giving rise to a finding of constructive possession, the Eleventh District Ohio Court of Appeals merely states the above and affirms. In *State v. Fabian*, No. 2001-T-0080, slip op. at 5 (Ohio Ct. App. June 21, 2002), the Eleventh District Ohio Court of Appeals noted a concern that under *Williams*, "an individual motivated by animosity could mail prohibited narcotics to a completely innocent and unwitting victim. Such mailing, coupled with a contemporaneous anonymous phone call would set the stage for the arrest and prosecution of a law-abiding citizen." Further, although the Ohio Court of Appeals relied on *Jackson, supra,* in *Williams, Jackson* does not support the decision reached in *Williams*. In *Jackson,* similar to the present case, a package was identified and examined in transit. It was found to contain approximately 75 grams of heroin concealed within the package. All but 2.5 grams were removed by law enforcement. A controlled delivery was undertaken, and the altered package was delivered. Jackson was apprehended with the altered package as he

---

[1] Until now, *State v. Williams*, 690 N.E.2d 1297 (Ohio Ct. App. 1996), has never been cited outside decisions of the Ohio Court of Appeals. Relevant to constructive possession, *Williams* has been cited in *State v. Rideau*, No. 17002 (Ohio Ct. App. Feb. 26, 1999); *State v. Saddler*, No. 72418 (Ohio Ct. App. Oct. 21, 1999); and *State v. Fabian*, No. 2001-T-0080 (Ohio Ct. App. June 21, 2002).

attempted to flee upon arrival of police. *Jackson* contains no discussion of constructive possession. In fact, the term "constructive possession" does not appear in the opinion. The issues presented and decided in *Jackson* included whether a search warrant was defective, whether the district court erred in failing to find that he was a "minor participant," whether the government established his knowledge of the contents of the package, and whether the government presented sufficient evidence to establish his intent to distribute. Most telling is that in *Jackson*, the defendants were charged with "attempting to possess with intent to distribute, and with attempting to import approximately 75 grams of heroin." *Jackson*, 55 F.3d at 1222. The amount originally contained in the package was relevant to the crime of attempt. Evidence showing that the defendant made multiple calls to Nigeria regarding the package and to DHL, as well as his keen interest in its arrival, went to attempt. However, as to possession, the defendants were only charged with possession and intent to distribute the "2.5 grams of heroin, the amount left in the package upon delivery." *Id*. This is consistent with a controlled delivery. In a controlled delivery, the criminal defendant is charged with possession of the contraband delivered and with attempted possession of the amount removed. Constructive possession is entirely another matter.

Constructive possession is shown where "one controls a substance or has the right to control it." *Garner v. State*, 355 Ark. 345, 355, 131 S.W.3d 734, 738 (2003). This exists where the "defendant exercised care, control, and management over the contraband." *George v. State*, 356 Ark. 345, 354, 151 S.W.3d 770, 775 (2004). Constructive possession requires that the contraband be in a location "such that it could be said to be under the dominion and control of the accused." *Id*. Relevant to this are factors such as "proximity of the contraband to the accused, the fact that it is in plain view, and the ownership of the property where the contraband is found." *Id*.

There is no evidence to show that Strong exercised control or dominion over the package until it was delivered by law enforcement. Further, according to the testimony of Sergeant Michael Todd Daley, when the package was opened at the UPS hub in Monticello, the drugs were "seized" at that time. Clearly, Strong had no control or dominion over the removed drugs.

There was no evidence to show that Strong had anything to do with preparation or delivery of the package to UPS in California. None of the evidence in this case shows that the package was

in Strong's constructive or actual possession until the controlled delivery. Apparently, the majority concludes that Strong had constructive possession from the time the package was shipped in California. That is inconsistent with the law on constructive possession. A controlled delivery is made to obtain a charge of actual possession for the drugs left in the package and for the crime of attempt with respect to the drugs that were removed. *See Jackson, supra.* There was no charge of attempt made in this case. Further, the majority opines that evidence was offered to show that Strong had the intent to deliver 520 grams of cocaine in the package when it arrived in Dermott rather than the 12.7914 grams actually delivered. The question of whether substantial evidence on that issue was presented need not be considered because there was no attempt charge in this case, and Strong did not possess the package until delivery.

BROWN and IMBER, JJ., join.